LACLEDE GAS LIGHT COMPANY, Respondent, v. GAS CONSUMERS ASSOCIATION, Appellant.

St. Louis Court of Appeals, November 18, 1907.

1. **GAS COMPANIES: Gaspipes: Fixtures.** Gaspipes, put in by a gas company to connect its meters with the house pipes of property-owners under circumstances showing an intention to retain control of them, do not become fixtures, but remain the property of the gas company.

2. ———: ———: **Rights of House Owner.** Where a gas company furnished and put in inside pipes to connect its meters with the house pipes of property-owners, retaining the ownership of such connecting pipes, it could not prohibit a house owner from placing upon the pipes a governor to regulate the pressure of gas.

3. ———: ———: ———: **Injunction.** But this right of the house owners could not be exercised in such a way as to injure the meters or the connections of the company; such injury could be restrained by injunction.

Appeal from St. Louis City Circuit Court.—*Hon. Daniel D. Fisher,* Judge.

REVERSED AND REMANDED (*with directions*).

*O. J. Mudd* for appellant.

It was not shown that regulators were set wrongfully on pipes of plaintiff, because prior to 1903 plaintiff owned only the 18-inch lead pipe. And when, after 1903, plaintiff put in iron pipes extending them twelve

feet, such extended pipes beyond the meters were and became fixtures, part of the realty, and were put in without any agreement reserving to plaintiff ownership over them as chattels. Thornton on Oil and Gas, secs. 572, 550, 579; Smyth v. Sturges, 108 N. Y. 495; Penn. Gas. Co. v. Warren, etc., G. Co., 3 D. R. 67; Hunt v. Railroad, 76 Mo. 119; Brown v. Baldwin, 121 Mo. 126; Chouteau v. Gas Co., 47 Mo. App. 330.

*Percy Werner* for respondent; *I. H. Lionberger* of counsel.

(1) The gas company, where it owns the meter, has absolute control of it and the appliances used to make connections with it. The placing of the meter and connections on the premises of the consumer does not even amount to a bailment. The acts of severing pipes, breaking seals and destroying unions and connections are trespasses which will be enjoined. Thornton's Law, Relating to Oil and Gas, sec. 553, p. 619; Blondell v. Consolidated Gas Co., 89 Md. 732, 46 L. R. A. 187. (2) Where trespasses are harassing and continuous and will involve a multiplicity of suits for redress, damages are not adequate remedy for such continued harassment or annoyance, and justifies the preventive aid of injunction. Land Co. v. Manning, 98 Mo. App. 257; Heman v. Wade, 74 App. 339. (3) Respondent's meters and meter connections do not become fixtures on the premises by their mere installation for the purpose of supplying gas to such premises. Goodin v. Hall Ass'n, 5 Mo. App. 294; Rogers v. Craw, 40 Mo. 91; Donnewald v. Real Estate Co., 44 Mo. App. 350; Hines v. Ament, 43 Mo. 300; Matson v. Calhoun, 44 Mo. 368; Lowenberg v. Bernd, 47 Mo. App. 297; Priestly v. Johnson, 67 Mo. App. 636; Kuhlman v. Meier, 7 Mo. App. 263; Gregg v. Railroad, 48 Mo. App. 494; State ex rel. v. St. Louis, 169 Mo. 31; Morrison v. Sohn, 90 Mo. App. 76; Southern El. Supply Co. v. Rolla E. L. & P. Co., 75 Mo. App. 627.

BLAND, P. J.—Plaintiff and defendant are both corporations doing business in the city of St. Louis. Plaintiff manufactures and supplies gas to resident and business houses in said city for illuminating and fuel purposes. Its gas is carried to the consumer by pressure and force of gravity, through pipes laid by the company. Plaintiff's service pipes penetrate the basement walls of the buildings where gas is consumed and are there connected with meters furnished and installed by plaintiff at its expense. The pipes leading from the gas mains laid in the streets to the houses are called inlet or service pipes, and the gas flows through these pipes into the meter and from the meter into the house pipes, which are connected with the meter. What are termed in the evidence "the house pipes," are installed by the owner of the house and run horizontally between the floor and the ceiling of the basement, and are ordinarily brought near the place where the meter is to be located, and are connected with the meter by nipples and, when necessary, additional pipes are furnished by the gas company. A nipple only is used when the house pipes reach within eight inches of the meter; when they do not, additional pipe must be used to make the connection. A nipple in gas fitting, according to the evidence, is a piece of gas pipe eight inches or less in length, with threads cut on either end. In installing meters the company supplies the nipples and, generally, additional pipe when necessary to connect the meter with the house pipe, if the distance does not exceed twelve feet; if the distance is more than twelve feet, the owner of the house is expected to furnish the extra pipe. From the oral and photographic evidence in the record, it appears that prior to 1904, plaintiff company used lead pipe to make meter connection; that during the year 1903, it took out all the old meters and lead pipe, installed new meters and made the connections with iron pipe and sealed these connections. The reasons given

for making this change are that the iron pipes hold the meter in a rigid position, whereas the lead pipes did not do so; that the iron pipes prevent the meters from getting out of plumb and the lead ones did not; that the iron pipes were installed for the further reason it was an easy matter to disconnect the meter from the lead pipes and then connect the service pipe with the house pipes by means of a rubber tube and that this practice had been indulged in by some of plaintiff's patrons to the loss of plaintiff. Another reason for making the change was to prevent the defendant company from attaching its governor to the inside pipes furnished by plaintiff. The gas regulator is described as follows: "An automatic machine for governing and regulating the pressure of gas; it is placed on the pipes after the gas has passed the meter; our apparatus is to keep the flow of the gas even, stop all over-pressure or wasting. . . . It will control the capacity—the capacity of the machine is equal to the capacity of the pipe that goes into it. The capacity of the machine, in other words, is equal to the output of the meter." The machine automatically regulates the pressure.

Defendant company is engaged in installing gas regulators in the city of St. Louis, and has about two thousand such machines in use in the said city. Defendant's evidence tends to show that the pressure of gas as furnished by plaintiff is at times uneven and very irregular, and that its machine remedies this irregularity; that prior to the year 1903, it installed its machines by disconnecting the lead pipe with the meter, then inserted the machine and reconnected the pipe with the meter; that when lead pipe was used this could be done without in the least disturbing the position of the meter, or injuring it or any of its parts; that after the iron pipe connections were made and the connections sealed, a disconnection could not be made without breaking the seals, and plaintiff refused to remove the seals to allow

defendant to install its regulator; that on account of this condition of affairs, in order to place the regulator, defendant was forced to cut the nipple or the pipe running up from the meter to the house pipe; and plaintiff's evidence tends to show that by this method of installation, defendant cut pipes and nipples which plaintiff had furnished to make connections and the operation disturbed the position of the meters, at times broke parts of them, caused them to leak and broke the seals, and otherwise damaged the meters and their connections. The suit is in equity to enjoin defendant from in anywise interfering with plaintiff's meters, pipes and nipples it has in use, or may hereafter have in use.

The decree, as modified by the trial court (omitting caption), is as follows:

"Now this fourteenth day of June, 1907, defendant's motion to alter and modify the decree heretofore entered in this cause, on to-wit, the sixth day of March, 1907, having been duly considered by the court, the said motion is sustained and said decree so altered and modified as to read as follows:

"Wherefore, it is by the court ordered, adjudged and decreed that the defendant and its agents and servants be and they hereby are and each of them is, perpetually enjoined, from attaching gas regulators or governors to any of the pipes or nipples belonging to the plaintiff company, and by it placed in position in any of the buildings or dwellings in the city of St. Louis, for the purpose of connecting its gas meters with the house pipes in said buildings and dwellings and through which pipes or nipples, so owned and placed by said plaintiff company, the said plaintiff company supplies gas to such buildings or dwellings, and from cutting the pipes and nipples, or disturbing or in any manner interfering with the unions or connections made between the said pipes and nipples so belonging and placed in position by said plaintiff company, and its meters

and the said house pipes in said buildings and dwellings, except as hereinafter decreed, or from in any manner interfering with the meters, meter connections, meter seals and locks belonging to said plaintiff company, and installed in position by said plaintiff company in any of the buildings or dwellings in the city of St. Louis; provided that whenever the defendant shall have received the written directions and authority from the owner or occupant of any building or dwelling in the city of St. Louis, to install its gas regulator on the house gaspipe belonging to such building or dwelling, and such owner or occupant shall, in writing, notify the plaintiff of such fact and in such notice designate a day and hour, not less than three days in advance of the service of such notice on plaintiff, when such owner or occupant desires and intends to have installed such regulator, and request plaintiff to furnish a capable gas fitter to then and there, or prior thereto on the day mentioned in such notice and between eight o'clock a. m. and three o'clock p. m., shut off the gas supply from such premises and disconnect plaintiff's pipe, nipple or meter connection on the outlet side of its meter, from the house pipe belonging to such building or dwelling, at the union between the same, so as to enable defendant to install its regulator on the house pipe belonging to such building or dwelling, and to thereafter reconnect such pipe, nipple or meter connections belonging to plaintiff, with such house pipe, and agree to pay or authorize the charge against him of the reasonable cost of furnishing such gas fitter for such work, and provided that, should the plaintiff fail on such notice, and on the day mentioned therein and between the hours of eight a. m. and three p. m. to so furnish such gas fitter, and to make such disconnection and reconnection, then the defendant may shut off such gas supply and disconnect and reconnect such union between the house pipe and meter connections heretofore mentioned, do-

ing same in a careful and skillful manner. And the costs of this proceeding are adjudged against defendant, and unless same are paid within ten days after the date hereof, execution shall issue in favor of plaintiff therefor."

Defendant moved the court for a further modification of the decree so as to permit it to remove any and all of its gas regulators on the refusal or failure of its customers to pay the agreed rent for the use of same. This motion does not appear to have been acted on. Defendant filed a timely motion for new trial which the court overruled and an appeal was taken to this court.

Defendant makes two points in its brief; first, that the pipes put in by plaintiff to connect the meters with the house pipes became fixtures, the property of the owner of the house, and therefore plaintiff had no control over them; second, if the pipes used by plaintiff to make the connection remained the property of plaintiff, yet it should not be permitted to deny the right of the owner of the house such control over them as to prevent the installation of a gas regulator. In respect to the first point, the evidence shows no agreement whatever was made between plaintiff company and owners of houses concerning the pipes used by the company to make meter connections with the house pipes; and the evidence further shows that when lead pipes were used, and afterwards when they were taken out and iron ones substituted, plaintiff used its own pipes to make the connection, without charge or expense to the owner of the house. The furnishing of the pipes in the manner and for the purpose stated is beneficial to the owner of the house, and they are furnished partly for his own accommodation and, presumably, with his knowledge and consent. The meter is undoubtedly plaintiff's property, and the connections are so made as to show conclusively that plaintiff intends to retain

control not only over the meter, but likewise over its seals and the pipes used by it to make connections with the house pipes. In these circumstances, it would be grossly inequitable to hold that the pipes furnished by plaintiff to make the necessary connections to furnish gas to the house became fixtures and ceased to be the plaintiff's property. We therefore rule against plaintiff's first point. In regard to the second point, it is proper to state that plaintiff furnished some inside pipe, which it was under no obligation to furnish, and so connected such pipe with its meter, that the pipe cannot be removed by the house owner, or cut, without interfering materially with the meter connections, and hardly without disturbing the meter itself. On account of this method of installation, plaintiff claims the right to exclusive control over the extra pipe put in by it. If it has the right to exclusive control then the house owner, or no person for him has any right to place a governor in such pipe to regulate the pressure of the gas. [Thornton on Oil and Gas, sec. 553.] Ordinarily, the house owner, to entitle him to meter connection, is required to bring his pipes to where the meter is to be installed, and the gas company makes the connection by a short lead pipe; but in whatever manner the connection is made, the gas is delivered to the consumer when it passes through the company's meter into the inside pipes (Chouteau v. St. Louis Gaslight Co., 47 Mo. App. 326); and this is so irrespective of the ownership of the inside pipes. The company is under no obligation other than to furnish a nipple or short piece of pipe to connect its meter with the house pipe. Because it furnishes additional pipe at its own option to make such connections, it ought not and does not give it exclusive control over the gas after it leaves the meter, nor has it the right to prohibit the owner, or any one for him, from placing upon the pipe so furnished a governor

to regulate the pressure of the gas. On the other hand, in view of the fact that the owners of houses permit the company to use its own pipes to make inside connections, the owner, nor any one by his order or permission, has any right to cut these pipes for the purpose of placing a governor upon them if in doing so the meter is thereby thrown out of plumb, its parts broken, or it is caused to leak, or it connections and seals broken. From the evidence, it appears that such injury is done by defendant to the meter and its connections when placing the governor on the pipes. This injury is oft recurring, for which the law is ineffectual to afford adequate compensation in damages. For this reason plaintiff is entitled to injunctive relief and to such relief as will prevent defendant from injuring its property, or interfering with the property rights which plaintiff has in its meters, meter connections and seals. But the right of the owner of the house to place, or have placed, a governor on the pipes to regulate the pressure of gas is an inherent right, the exercise of which cannot be enjoined; its exercise, however, in the circumstances of the case, must and should be regulated in such manner as to secure protection to plaintiff's property rights, and we think this will be accomplished by the terms of the decree rendered by the trial court, which we approve as far as it goes, but it should go further and provide that defendant may remove its regulator under such restrictions and on such terms as the circuit court may deem just and proper. The judgment is reversed and the cause remanded, with directions to the circuit court to modify its judgment as above indicated. All concur.